UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PARKS T. CHASTAIN and )
PENNY K. CHASTAIN, individually )
and as representatives of the classes )
                                )
       Homeowners, )     Case No: _____
                                )
v. )     JURY DEMAND
                                )
WELLS FARGO HOME MORTGAGE, )
A division of WELLS FARGO BANK, )
NATIONAL ASSOCIATION )
                                )
       Defendant. )

## CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT, AND VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

Comes now the plaintiffs, Parks T. Chastain and Penny K. Chastain (hereinafter referred to as "Homeowners"), individually and the putative classes set forth below and for Complaint against the defendant, Wells Fargo Home Mortgage, a division of Wells Fargo Bank, National Association, (hereinafter "Assignee of the Servicing Rights") would state as follows:

### PRELIMINARY STATEMENT

1. The Homeowners and the putative class members currently have or formerly had servicing rights of home mortgage loans assigned to Assignee of the Servicing Rights, and were required to purchase additional flood insurance by Assignee of the Servicing Rights.

2. Assignee of the Servicing Rights has violated the legal rights of the

Homeowners and other putative class members, as set forth below.

3.    Assignee of the Servicing Rights unjustly and unlawfully placed flood insurance upon the property of the Homeowners and other putative class members at the expense of the Homeowners and other putative class members.

4.    Assignee of the Servicing Rights unjustly and unlawfully profited from placing forced-placed flood coverage upon the property of the Homeowners and other putative class members by accepting fees, kickbacks and/or other things of value for forced placed flood coverage under an agreement with its affiliated forced-placed coverage provider for which it did not actually perform a needed service.

5.    Assignee of the Servicing Rights knowingly used, and continues to use, unfair or deceptive practices in force placing flood insurance upon the property of the Homeowners and other putative class members for which such flood insurance is not required by law.

6.    Based upon Assignee of the Servicing Rights' conduct described herein, the Homeowners assert claims against Assignee of the Servicing Rights for (1) violation of the Tennessee Consumer Protection Act; (2) violation of the Fair Debt Collection Practices Act; and (3) violation of the Real Estate Settlement Procedures Act.

7.    The Homeowners assert the above-mentioned claims on behalf of the following proposed classes. The Homeowners assert their Tennessee Consumer Protection Act claim (Count 1) on behalf of a putative Tennessee Class consisting of all persons who have or had servicing rights of a home mortgage loan assigned to Assignee of the Servicing Rights, and were required by Wells Fargo or its agents or affiliates to purchase or maintain flood insurance on their property in the state of

Tennessee. The Homeowners assert their Fair Debt Collection Practices Act and Real Estate Settlement Procedures Act claims (Counts 2-3) on behalf of a putative nationwide class consisting of all persons who have or had servicing rights of a home mortgage loan assigned to Assignee of the Servicing Rights, and were required by Wells Fargo or its agents or affiliates to purchase or maintain flood insurance on their property in the United States.

## THE PARTIES

8.     The Homeowners are residents of Waverly, Humphreys County, Tennessee, residing at 310 North Maple Avenue, Waverly, Tennessee 37185 and are members of the Putative Classes defined herein. They are thus citizens and residents of Tennessee for purposes of 28 U.S.C. § 1332.

9.     Assignee of the Servicing Rights is a home mortgage company authorized to transact business in the State of Tennessee, organized under the laws of the State of California, and having its principal place of business in California. Assignee of Servicing Rights is a citizen and resident of the State of California for purposes of 28 U.S.C. § 1332. The registered agent for service or process in Tennessee is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203.

## VENUE AND JURISDICTION

10.     As it respects this suit, Assignee of Servicing Rights was the assignee of the servicing rights of a loan which was originated, approved, and closed by and on behalf of First Federal Bank Bank, Humphreys County, Tennessee. The real property subject to the loan is located in Waverly, Humphreys County, Tennessee. Accordingly, venue is proper in this Court and in this Division pursuant to 28 U.S.C. §§ 1391 and

123, respectively.

11.     This case is brought pursuant to the Declaratory Judgment Act as codified in 28 U.S.C. § 2201 and Fed. R. Civ. P. 57. Jurisdiction exists in this Court pursuant to the provisions of 28 U.S.C. § 1332. This action is also brought pursuant to the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. Jurisdiction exists in this Court pursuant to 15 U.S.C. § 1692(k), which allows an action to enforce liability under the Federal Fair Debt Collection Practices Act in any appropriate United States District Court without regard to the amount in controversy. Nonetheless, the amount in controversy exceeds the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00), exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims joined herein.

FACTS

12.     Homeowners acquired the property at 310 North Maple Avenue, Waverly, Tennessee 37185 in the calendar year 2009. In 2010, the Homeowners decided to refinance their loan and contacted First Federal Bank Bank, through the branch located in McEwen, Humphreys County, Tennessee, and submitted a loan application for a conventional refinance.

13.     As part of First Federal Bank Bank's origination and closing guidelines, flood insurance was required. At the time of the refinance, Homeowners had in full force and effect a flood policy State Farm Insurance had issued through the National Flood Insurance Program and administered. The coverage amount of the policy was $129,000.00.

14.     First Federal Bank Bank, the originating lender, agreed it would accept

and underwrite the loan with this coverage amount in place because the insurance provided the bank sufficient coverage in the event of loss by flood. First Federal Bank accepted proof of insurance. This proof was in the form of a flood policy issued through the National Flood Insurance Program, and the closing occurred on September 23, 2010.

15.     First Federal Bank required no further insurance for origination, processing or closing of the loan. The loan was approved, and the closing occurred. As part of the closing, as escrow account was established for the payment of premiums under the flood policy.

16.     Homeowners executed the Deed of Trust at the time of closing, which identified the Homeowners as "Borrower," and identified First Federal Bank as the "Lender."

17.     The Deed of Trust executed by the Homeowners at the time of closing provided as follows:

> **5.     Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require borrower to pay in connection with this Loan, either:   (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

18.     At the closing, Franklin American Mortgage Company was provided a Notice of Assignment, Sale or Transfer of Servicing Right.  That Notice of Assignment, Sale or Transfer of Servicing Right to Franklin American Mortgage Company provided that:

> The assignment, sale or transfer of the servicing of the mortgage loan does not effect any term or condition of the mortgage instruments, other than terms directly related to the servicing of the loan.

19.     Franklin American Mortgage Company notified the Homeowners of the transfer of the servicing rights on the mortgage and was provided with proof of all insurance on the subject property, including the flood policy.   Franklin American Mortgage Company did not indicate any disagreement or objection to the flood policy in place.

20.     On October 19, 2010, the Homeowners received a "Servicing Transfer Letter" which stated the servicing of the loan "that is the right to collect payments...," was assigned to Wells Fargo Home Mortgage effective beginning with the 12/01/2010 payment.  This "Servicing Transfer Letter" stated:

> The assignment, sale or transfer of the servicing of the mortgage loan does not effect any term or condition of the mortgage instruments, other than terms directly related to the servicing of the loan.

21.     The only rights that had been assigned to Assignee of the Servicing Rights were the servicing rights under the loan.  Throughout all communication, neither the original Lender nor any entity with rights of the Lender advised the Homeowners that no term any condition of the loan had changed.  The Homeowners understood the holder of servicing rights would have no ability to change the terms or conditions of the

loan.

22.     On November 22, 2010, the Assignee of the Servicing Rights advised that

it did not have proof of flood insurance.  A copy of this letter is attached as Exhibit "A".

23.     By letter dated December 3, 2010, the Homeowners responded as

follows:

> To Whom It May Concern:
>
> Attached please find a letter we received from Wells Fargo Home Mortgage along with our certification for flood insurance.  This payment was escrowed at closing, and we are currently paying through the escrow program for the renewal of the flood premium.  The loan was sold, and finally landed at Wells Fargo. Attached please find a General Change Endorsement listing Wells Fargo Home Mortgage as the mortgagee.
>
> I know that ERESPA analysis is going to be performed.  You will find the original flood renewal confirmation when the renewal flood policy, which was provided at closing, and made payable to First Federal Bank and then you should also have one that was made payable to Franklin American Mortgage and its assignees. Accordingly, your bank is protected and you will find the attached declarations page also.
>
> I am also attaching a letter from my agent confirming that he is still trying to get the spelling of our name corrected.  Should you have any questions or wish to discuss this matter further, please do not hesitate to contact me.
>
> A copy of this letter is attached as Exhibit "B".

24.     On December 10, 2010, the Assignee of the Servicing Rights confirmed it

had received the flood policy and had updated its records to reflect that the policy was

effective through 10/16/11.  A copy of this letter is attached as Exhibit "C".

25.     Shortly thereafter, and specifically on December 24, 2010, Assignee of

Servicing Rights sent a letter to the Homeowners, purportedly made under the Fair

Debt Collection Practices Act, advising of a deficiency in flood coverage and demanding

that additional coverage be obtained.  This letter stated Assignee of Servicing Rights

would force place additional flood coverage if proof of such coverage was not received within forty-five (45) days. Further, the letter stated that forced placed coverage would be "provided by American Surety Group as arranged by Wells Fargo Insurance, Inc. Wells Fargo Insurance is an affiliate of Wells Fargo Bank, N.A. Wells Fargo Bank, N A will be compensated" in connection with force placing the insurance. A copy of this letter is attached hereto as Exhibit "D".

26. Not only did the letter dated December 24, 2010 invoke the Fair Debt Collection Practices Act, it referenced loan requirements not of the Lender, but of Assignee of Servicing Rights, which held only the servicing rights to the loan.

27. The Homeowners responded to Exhibit "D" by letter dated January 4, 2011, stating as follows:

To Whom It May Concern:

I received the attached letter indicating that Wells Fargo requires additional flood coverage to be placed on my home. I object to Wells Fargo placing any additional coverage on this home and writing to explain why Wells Fargo is incorrect in this assertion.

Wells Fargo acquired the rights to this loan by assignment. The original lender, First Federal Bank Bank, had a policy which required flood insurance only for the amount of the indebtedness (with the value of the land being considered also). We provided flood insurance in the amount of $129,000.00, and presented this to First Federal Bank Bank. This amount was accepted as sufficient flood coverage, and First Federal Bank closed the loan.

First Federal Bank then assigned the loan to Franklin American Mortgage which, in turn, assigned the loan to Wells Fargo. To put it in legal terms, I believe that the rights of Wells Fargo are no greater than the rights of First Federal Bank Bank, which is received by assignment. Because First Federal Bank has accepted this existing flood coverage as sufficient, and indeed went through with the closing based upon the flood coverage then existing (which was exactly the same policy as is in place now), Wells Fargo cannot, in its position as assignee, step in and demand that further coverage be placed. I have reviewed the closing documentation which we signed, and find absolutely nothing which confers greater rights upon an assignee than those which were possessed by the

assignor.

Therefore, I call upon Wells Fargo to provide an explanation of any reason why this requirement of complying with Wells Fargo's coverage requirement is imposed upon me, and call upon Wells Fargo to do within thirty (30) days. If such documentation exists and is binding upon me, I will place the additional coverage by increasing the amount on my policy. Since the attached letter refers to the Fair Debt Collection and Practices Act, I also call upon Wells Fargo to produce the writing signed by me which obligates me to incur this indebtedness.

In no event should Wells Fargo place coverage. As I have indicated above, in the event Wells Fargo has some documentation that I have overlooked, and which is binding upon me, I will place the coverage. However, I do not believe this to be the case and do no believe that an assignee, in the position of Wells Fargo, can insist that coverage not required by the original lender be placed.

The bottom line is that Wells Fargo is protected because of the value of the property and the amount of the current policy are sufficient to protect its financial interest in the home. The fire/wind coverage is more than enough to protect the interest of Wells Fargo, and the increased limit of the flood coverage is simply not required.

Please respond to this letter within thirty (30) days. If you have any questions, please do not hesitate to contact me at the above number.

See letter attached as Exhibit "E".

28.    As of the date of filing, Assignee of Servicing Rights has provided the Homeowners with no documentation that contains the signature of either Homeowner agreeing to modify the terms of the agreement with First Federal Bank such as to provide replacement cost flood coverage, nor has any entity with the rights of the Lender demanded that such occur.

29.    By letter dated January 4, 2011, and attached hereto at Exhibit "E", the Homeowners also advised the Assignee of the Servicing Rights in no event were they to place forced coverage, because coverage could be added by action of the Homeowners to the existing policy if an obligation to do so existed. The Homeowners also indicated that if production of any binding documentation was made pursuant to

the Fair Debt Collection Practices Act or other demands, they would have the coverage added.

30.     On February 21, 2011, Assignee of Servicing Rights sent a letter to the Homeowners which stated that forced placed coverage had been placed through American Surety Insurance Company, for which the Homeowners would be charged. This notification indicated forced placed coverage was effective as of February 12, 2011.  A copy of this letter is attached as Exhibit "F".  This coverage was placed by the Assignee of the Servicing Rights.

31.     Action taken by Assignee of Servicing Rights to force place this coverage was taken prior to Assignee of Servicing Rights responding to the Homeowners' request to be provided with an explanation of any reason why compliance with Assignee of Servicing Rights' coverage requirement is imposed upon the Homeowners.

32.     In March 2011 the Homeowners received a letter from Freddie Mac dated December 29, 2010 advising Freddie Mach bought the mortgage loan secured by property located at 310 N. Maple Avenue, Waverly, TN 37185-1568 on December 12, 2010.  This letter also indicated that no terms or conditions of the Mortgage, Deed of Trust, or Note are affected by the sale, and that Assignee of Servicing Rights continued to have servicing rights only.  A copy of this correspondence is attached as Exhibit "G".

33.     By letter dated March 24, 2011, Assignee of Servicing Rights responded to the Homeowners request made on January 4, 2011, in which the Homeowners called upon Wells Fargo to explain why additional coverage could be required.

34.     This response from Assignee of Servicing Rights was received more than thirty (30) days after request for same.

35. The letter from Assignee of Servicing Rights dated March 24, 2011 advised the Homeowners, pursuant to the Deed of Trust, the Homeowners are required to insure the property for any hazards, including flooding, "...for which the Lender requires insurance." Assignee of Servicing Rights advised the Homeowners this language in the Deed of Trust entitled Assignee of Servicing Rights to require additional flood coverage. A copy of this correspondence is attached as Exhibit "H".

36. By letter dated March 28, 2011, Assignee of Servicing Rights provided the Homeowners with a copy of the forced placed policy placed through American Surety Insurance Company in the amount of $121,000.00. The policy indicated that forced placed coverage was effective beginning February 12, 2011.

37. The policy indicated Assignee of Servicing Rights as the named insured mortgagee. As an Assignee of Servicing Rights only, it is improper for Assignee of Servicing Rights to be a named insured on this policy. A copy of the policy is attached as Exhibit "I".

38. Assignee of Servicing Rights had no authority to require insurance in addition to the amount of insurance required by the Lender and/or its Assignees.

## CLASS ACTION ALLEGATIONS

39. The Homeowners assert their Tennessee Consumer Protection Act claim (Count 1) on behalf of a putative Tennessee Class defined as follows:

> **Proposed Tennessee Class:** All persons who have or had servicing rights of a home mortgage loan assigned to Assignee of the Servicing Rights, and were required by Wells Fargo or its agents or affiliates to purchase or maintain flood insurance on their property in the state of Tennessee within the applicable time period set forth by the statute of limitations.

40. The Homeowners assert their Fair Debt Collection Practices Act and Real

Estate Settlement Procedures Act claims (Counts 2-3) on behalf of a putative nationwide class defined as follows:

> **Proposed Nationwide Class:** All persons who have or had servicing rights of a home mortgage loan assigned to Assignee of the Servicing Rights, and were required by Wells Fargo or its agents or affiliates to purchase or maintain flood insurance on their property in the United States within the applicable time period set forth by the statute of limitations.

41.    **Numerosity:** The joinder of all members of the Putative Classes defined herein is impracticable due to the numerosity of class members. Hundreds and likely thousands of Assignee of Servicing Rights' customers satisfy the definition of the Putative Classes.

42.    **Typicality:** The Homeowners' claims are typical of the members of the Putative Classes, including, but not limited to, the following facts: (1) the assignment of servicing rights assigned to Assignee of Servicing Rights were typical of those of other Putative Class members; (2) the form flood insurance notice letters the Homeowners received were typical of those received by other class members; (3) Assignee of Servicing Rights treated the Homeowners in a manner consistent with its practices and procedures; (4) it was and is typical for Assignee of Servicing Rights to force place flood insurance in excess amounts of what was required by their mortgages, and greater than required to cover the financed portion of the property; and (5) it was and is typical for Assignee of Servicing Rights to accept kickbacks, commissions, or other compensation in connection with forced placed flood insurance. The amount of flood insurance required by Assignee of Servicing Rights is equal to replacement cost value (not exceeding $250,000) for all Putative Class members, and the form letters sent by Assignee of Servicing Rights to all Putative Class members are the same or

substantially similar; (6) The kickbacks, commissions, or other compensation received by Assignee of Servicing Rights in connection with forced placed flood insurance were the same for each Putative Class member.

43.    **Adequacy:** The Homeowners will fairly and adequately protect the interests of the Putative Class, and has counsel experienced in complex litigation. The Homeowners have no interests adverse to the interests of the Putative Class.

44.    **Commonality:** Common questions of law and fact exist among all Putative Class members. The importance of such common questions of law and fact outweigh any questions of law and fact affecting only individual Putative Class members. Common questions of law and fact include, but are not limited to:

a)    Whether Assignee of Servicing Rights may require members of the Putative Class to purchase and maintain flood insurance on their property in amounts that exceed the financed portion of their homes, or in amounts that exceed those which were required to obtain their mortgages;

b)    Whether the form letters mailed by Assignee of Servicing Rights to members of the Putative Class misrepresent accurate flood insurance requirements;

c)    Whether Assignee of Servicing Rights violated the Real Estate Settlement Procedures Act (RESPA) by accepting kickbacks, commissions, or other compensation in connection with forced placed flood insurance policies;

d)    Whether the actions taken by Assignee of Servicing Rights violate the Tennessee Consumer Protection Act;

e)    Whether any declaratory or injunctive relief is appropriate, and if so, the

appropriate form of such relief; and

f) Whether any members of the Putative Class are owed compensatory damages, statutory damages, and/or any other relief, and if so, the appropriate amounts of such relief.

45. This class action is maintainable under Fed. R. Civ. P. 23(b)(2), because Assignee of Servicing Rights' has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

46. This class action is maintainable under Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to members of the Putative Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating these claims. Assignee of Servicing Rights' conduct described herein represents consistent practices and policies, resulting in the unnecessary sales of flood insurance and acceptance of kickbacks for which access to Assignee of Servicing Rights' records and class-wide documents is needed. The amount of each Putative Class member's individual claim is small when compared to the expense and burden of individual litigation, and members of the Putative Classes therefore do not have an interest in pursuing separate actions against Assignee of Servicing Rights. The Homeowners are not aware of any claims made by individual members of the Putative Classes, nor are the Homeowners aware of any prior request to establish the Putative Classes defined herein. Maintaining these claims as a class action will preclude inconsistent judgments and promote judicial efficiency.

47. The Homeowners intend to send notice to all members of the Putative

Classes as required by Fed. Rule Civ. P. 23. The names and addresses of Putative Class members are contained in Assignee of Servicing Rights' records.

## CAUSES OF ACTION

### A.    DECLARATORY RELIEF SOUGHT

48.    The Homeowners re-state and re-allege all the allegations previously set forth in ¶¶ 1 - 47 of the Complaint.

49.    As the originating and lending institution, First Federal Bank required only flood insurance in amounts sufficient to protect the indebtedness of the loan, in this case $129,000.00. First Federal Bank advised the Homeowners although the loan was $130,000.00, the land itself had value, so the insurance that they provided of $129,000.00 was appropriate.

50.    Obviously, First Federal Bank proceeded with the closing of the loan, and accepted the proof of insurance that was produced.

51.    First Federal Bank then assigned the servicing rights to Franklin American Mortgage, which in turn assigned its servicing rights to the Assignee of the Servicing Rights. At no point has an assignment of anything other than the servicing rights been made, and at no point has any entity with rights of the Lender made additional demand for insurance coverage.

52.    As an Assignee of the Servicing Rights only, Assignee has no right to demand additional insurance coverage where such demand was not put in place by First Federal Bank or Freddie Mac.

53.    Consequently, the Homeowners were not required to provide insurance on the home at 310 North Maple Avenue, Waverly, Tennessee under the flood

coverage in any amount in excess of that policy amount currently existing.

**WHEREFORE**, the Homeowners request a declaration for this Court as follows:

a.         Assignee of Servicing Rights improperly required additional insurance to be placed upon the home located at 310 North Maple Avenue, Waverly, Tennessee;

b.         Assignee of Servicing Rights improperly placed forced coverage on the property;

c.         Assignee of Servicing Rights acted contrary to its assigned rights when placing the coverage with American Security Insurance Company;

d.         Assignee of Servicing Rights violated the Fair debt Collection Practices Act;

e.         Assignee of Servicing Rights engaged in unfair or deceptive practices in failing to timely and adequately respond to inquiries from the Homeowners and in placing forced coverage when none was required;

f.         Acts committed by Assignee of Servicing Rights violate RESPA;

g.         For such further and legal equitable relief as this Court deems just and proper; and

h.         That court costs be taxed to Assignee of Servicing Rights.

## B. VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

54.     The Homeowners re-state and re-allege all the allegations previously set forth in ¶¶ 1 - 53 of the Complaint.

55.    The Homeowners and members of the Putative Class are consumers under the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, et. seq.

56.    The Act, specifically T.C.A. § 47-18-109, provides a private right of action for any individual who sustains a loss of money or property:

> as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part. . . .

T.C.A. § 47-18-109(a)(1).

57.    The Homeowners, on behalf of themselves and members of the Putative Class, allege that the conduct of the Assignee of the Servicing Rights set forth above constitutes unfair or deceptive trade acts or practices under T.C.A. § 47-18-104, as follows:

> (1) Falsely passing off goods or services as those of another;
> (2) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
> (3) Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;
>                                  * * * * *
> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;
>                                  * * * * *
> (12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;
> (13) Representing that a service, replacement or repair is needed when it is not;
>                                  * * * * *
> (27) Engaging in any other act or practice which is deceptive to the consumer or to any other person;

58.    Owing to the complete and utter failure of the Assignee of the Servicing Rights to even respond to the request from the Homeowners to establish their claim in writing, and comply with the dictates of the Fair Debt Collection Practices Act, the

Homeowners must conclude that the violation of the Tennessee Consumer Protection Act is willing and knowing, thereby entitling them to treble damages under T.C.A. § 47-18-109. The Assignee of the Servicing Rights acted willfully by intentionally or conscientiously uses the unfair or deceptive practice of act described above, and knowingly by using these unfair or deceptive practices or acts with actual awareness that the practice or act is false or deceptive. Actual awareness may be inferred when the circumstances, viewed objectively, would indicate that a reasonable person would have known, or have reason to know, of such falsity or deception.

59. The Putative Class members are entitled to an award of attorney fees under T.C.A. § 47-18-109.

60. Consequently, the Homeowners and all other members of the Putative Class are entitled to judgment against the Assignee of the Servicing Rights Wells Fargo for any and all damage arising from the violations of the Consumer Protection Act. At present, this would include but not be limited to:

      a.     The amounts charged for insurance;

      b.     The Putative Class members' time and expenses in responding to the multiple letters from Wells Fargo Home Insurance regarding flood coverage; and

      c.     Legal expenses associated with the filing of this Complaint;

**WHEREFORE**, the Homeowners, on behalf of themselves and the Putative Class, demand judgment as follows:

      a.     For damages against the defendant, Wells Fargo, for all compensatory damages sustained by members of the Putative Class;

      b.     For attorney's fees to be awarded under T.C.A. § 47-18-109;

c.      For treble damages to be awarded under 47-18-109;

d.      For further legal and equitable relief as this court deems just and proper;

e.      That the court costs of this action be taxed to Assignee of Servicing Rights.

### C. VIOALTION OF THE FAIR DEBT COLLECTION PRACTICES ACT

61.     The Homeowners re-state and re-allege all the allegations previously set forth in ¶¶ 1 - 60 of the Complaint.

62.     The Putative Class members are "consumers" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a)(3).

63.     Assignee of Servicing Rights is a "debt collector" under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(a)(6).

64.     Additionally, Assignee of Servicing Rights is a "debt collector" by its own admission, as evidenced in a letter received by the Homeowners dated November 22, 2010, which stated, in part, "Wells Fargo Bank, N.A. is required to the Fair Debt Collection Practices Act to inform you that, as your loan servicer, we are attempting to collect a debt, and any information obtained will be used for that purpose." A copy of this letter is attached as Exhibit "A".

65.     By invoking the Fair Debt Collection Practices Act in the form letter sent by Assignee of Servicing Rights dated November 22, 2010, Assignee of Servicing Rights represented to the Homeowners and that its actions in collecting this alleged debt were subject to the Fair Debt Collection Practices Act.

66.     In its demand that supplemental insurance be obtained, the Assignee of the Servicing Rights represented that its correspondence represented an attempt to

collect a debt and thus invoked the Fair Debt Collection Practices Act.

67.     Believing that there was no obligation to satisfy the alleged debt, the Homeowners, on January 4, 2011, invoked the provisions of the Fair Debt Collection Practices Act which required Assignee of the Servicing Rights to provide proof of the indebtedness signed by the Homeowners prior to taking any action, and specifically within thirty (30) days.

68.     The Assignee of the Servicing Rights failed to provide any such documentation, and instead forced placed coverage prior to responding to the Homeowners' demand.  This practice is the common practice of Assignee of Servicing Rights, and the same actions were taken by Assignee of Servicing Rights in regards to other Putative Class members.

69.     The above actions by Assignee of Servicing Rights constitute unfair or deceptive acts in violation of the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

70.     Specifically, Assignee of Servicing rights violated 15 U.S.C. § 1692(d) by engaging in harassing, oppressive, and abusive conduct by continuing to collect the "debt" after repeatedly and continually being put on notice that the debt was not legitimate.

71.     Assignee of Servicing Rights violated 15 U.S.C. § 1692(e) by falsely representing the existence, character, amount of, and legal status of the "debt."

72.     Assignee of Servicing Rights violated 15 U.S.C. § 1692(f) by collecting an amount from the Homeowners which was not authorized by the original loan agreement, required by any entity assigned the full rights of the original lender, or

otherwise permitted by law.

73.    Assignee of Servicing Rights violated 15 U.S.C. § 1692(g), by failing to send a written notice, either in the initial communication or within five days thereof, containing:

a.    A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

b.    a statement that if the consumer notifies the debt collector in writing within the thirty day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

c.    a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

74.    Moreover, Assignee of Servicing Rights violated 15 U.S.C. § 1692(g) by failing to cease collection of the debt until it obtained verification of the debt and mailed a copy of such verification to Homeowners, following the written notification by Homeowners to the defendant, within the applicable 30-day period, that the debt was disputed.  This practice is the common practice of Assignee of Servicing Rights, and the same actions were taken by Assignee of Servicing Rights in regards to other Putative Class members.

**WHEREFORE**, the Homeowners, on behalf of themselves and the Putative

Class, pray as follows:

a.    The Assignee of Servicing Rights be required to pay damages to the Homeowners and all members of the Putative Class for violation of the Federal Fair Debt Collection Practices Act in the amount of actual damages, additional damages (1) in the amount of up to $1000.00 for each named plaintiff as could be recovered if each plaintiff brought suit individually; (2) "such amount as the court may allow for all other class members, without regard to a minimum individual recovery" in an amount up to $500,000 or 1 per centum of the net worth of Assignee of Servicing Rights; and (3) plaintiff's reasonable attorney's fees, as provided for in 15 U.S.C. § 1692(k).

b.    For further legal and equitable relief as this Court deems just and proper.

### D. VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

75.    The Homeowners re-state and re-allege all the allegations previously set forth in ¶¶ 1 - 74 of the Complaint.

76.    The Homeowners' and the Putative Class members' mortgage loans are federally-regulated mortgage loans subject to the requirements of the Real Estate Settlement Procedures Act (hereafter referred to as "RESPA"), 12 U.S.C. § 2601 *et seq.*

77.    RESPA expressly prohibits the giving or accepting of "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to a part of a real estate settlement service involving a federally related mortgage loan..." 12 U.S.C. § 2607(a).

78.    RESPA further states that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering

of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

79. The Assignee of Servicing Rights, as a result of its conduct in force placing additional flood insurance coverage, has violated the provisions of RESPA set forth in Paragraphs 77 and 78 herein.

80. Forcing "services involving hazard, flood, or other casualty insurance or homeowner's warranties" in connection with a federally-regulated mortgage loan constitutes a "settlement service" under RESPA. 24 C.F.R. § 3500.2.

81. The Assignee of Servicing Rights accepted fees, kickbacks and/or other things of value for forced placed flood coverage under an agreement with its affiliated forced-placed coverage provider for which it did not actually perform a needed service in violation of 12 U.S.C. § 2607(a).

82. The Assignee of Servicing Rights accepted a portion, split, or percentage of the unnecessary premiums charged to members of the Putative Class without performing any service in violation of 12 U.S.C. § 2607(b).

83. The Assignee of Servicing Rights violated the sections of RESPA referenced in Paragraphs 65 and 66 as evidenced by its own admission in a form letter to the Homeowners dated December 24, 2010, attached hereto as Exhibit "D" in which it admits to the unlawful compensation arrangements between itself and it's affiliates for forced placed insurance coverage.

84. This RESPA claim is timely, as the RESPA violations set forth above occurred within one year of the commencement of this action. Alternatively, the limitations period on this RESPA claim should be equitably tolled because the Putative

Class members did not discover and did not have a reasonable opportunity to discover Assignee of Servicing Rights' unlawful conduct until less than one year prior to the date that this action was filed.

WHEREFORE, the Homeowners, on behalf of themselves and the Putative Class, pray as follows:

a.    The Assignee of Servicing Rights be required to pay damages to the members of the Putative Class for violations of RESPA for actual damages, treble damages, court costs, and plaintiff's reasonable attorney's fees, as provided for in 12 U.S.C. § 2607(d).

b.    For further legal and equitable relief as this Court deems just and proper.

WHEREFORE, the Homeowners, on behalf of themselves and the Putative Classes demand judgment against Assignee of Servicing Rights as set forth above with respect to each cause of action, and that process be issued at that Assignee of Servicing Rights be required to answer and appear herein.

## JURY DEMAND

The Homeowners, on behalf of themselves and the Putative Class, demand a jury trial in accordance with Fed. Rule Civ. P. 38(b).

Respectfully submitted,

GORDON C. AULGUR
Registration No. 019953
**STEPHANIE A. CARTER**
Registration No. 029098
Attorneys for Homeowners, Parks T. Chastain
And Penny K. Chastain

**BREWER, KRAUSE, BROOKS,
CHASTAIN & BURROW, PLLC**
P. O. Box 23890
Nashville, TN   37202-3890
(615) 256-8787